```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   -------------------------------X
     UNITED STATES OF AMERICA           14 CR 625(DLI)
 3
     versus                             U. S. COURTHOUSE
 4                                      225 Cadman Plaza East
     CESAR ANAYA MARTINEZ,              Brooklyn, New York
 5
                     DEFENDANT.         April 17, 2019
 6   -------------------------------X   11:30 AM
 7
                 TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
 8               BEFORE THE HONORABLE DORA IRIZARRY
                     UNITED STATES DISTRICT JUDGE
 9
                         APPEARANCES
10
     Representing the Government:
11
     RICHARD DONOGHUE
12   UNITED STATES ATTORNEY
     EASTERN DISTRICT OF NEW YORK
13   271 CADMAN PLAZA EAST
     BROOKLYN, NEW YORK 11201
14   BY:  MARCIA HENRY, ESQ.
15   Representing the Defendant:
16   ROJAS & OLIVA, PA
     Fountain Square Centre, Suite 206
17   15800 Pines Boulevard
     Pembroke Pines, Florida 33027
18   BY:  RUBEN OLIVA, ESQ.
19
20   ALSO PRESENT:  MARIO MICHELENA, CERTIFIED SPANISH INTERPRETER
21
22   Reported by:
     LISA SCHMID, CCR, RMR
23   OFFICIAL COURT REPORTER
     225 Cadman Plaza East, Room N377
24   Brooklyn, New York 11201
     Proceedings recorded by mechanical stenography. Transcript
25   produced by Computer-Aided Transcription.
```

```
 1              COURTROOM DEPUTY:  Criminal Cause for Pleading,
 2   Docket Number 14 CR 625, United States versus Cesar Anaya
 3   Martinez.
 4              Please state your appearances.
 5              MS. HENRY:  Good afternoon, Your Honor.  Marcia
 6   Henry for the United States.
 7              THE COURT:  Good afternoon.
 8              MR. OLIVA:  Good morning -- good afternoon, Your
 9   Honor.  Ruben Oliva on behalf of the defendants, who is
10   present.
11              THE COURT:  Good afternoon.
12              And good afternoon, Mr. Anaya Martinez.
13              And he is being -- is it okay if I refer to you as
14   Mr. Martinez, just to shorten the proceeding a little bit?  Is
15   that okay with you?
16              THE DEFENDANT:  Yes.
17              THE COURT:  Okay.  Thank you.
18              And Mr. Martinez is being assisted today by the
19   Spanish language interpreter.
20              May we have your name, please, for the record?
21              THE INTERPRETER:  Certified Spanish Interpreter
22   Mario Michelena. Good afternoon.
23              THE COURT:  And good afternoon.  And Mr. Michelena
24   was previously sworn.
25              My understanding is that Mr. Martinez wishes to
```

 1   withdraw his previously-entered plea of not guilty and wishes

 2   to enter a plea of guilty to Count 1 of the third superseding

 3   indictment that's been filed in this case.

 4           And that would be pursuant to a plea agreement, is

 5   that correct, Mr. Oliva?

 6           MR. OLIVA:  That is correct, Your Honor.

 7           THE COURT:  And Mr. Martinez, is that what you wish

 8   to do today?

 9           THE DEFENDANT:  Yes.

10           THE COURT:  Okay.  Please administer the oath to

11   Mr. Martinez.

12           (Defendant sworn.)

13           THE COURT:  Mr. Martinez, I must ask you a number of

14   questions to assure myself that your plea is a valid plea, and

15   some of the questions may seem a little bit odd that I'm

16   asking you, but just bear with us, because I have to make a

17   complete record.

18           Are you able to speak and understand English?

19           THE DEFENDANT:  No, Your Honor.

20           THE COURT:  Are you able to read and write in the

21   English language?

22           THE DEFENDANT:  No, Your Honor.

23           THE COURT:  And Mr. Oliva, it is my understanding

24   that you are fluent in the Spanish language, is that correct?

25           MR. OLIVA:  That is correct, Your Honor.

```
 1            THE COURT:  And have you been able to communicate
 2    with your client in the Spanish language?
 3            MR. OLIVA:  I have, Your Honor.
 4            THE COURT:  And does that include also the ability
 5    to translate documents to him?
 6            MR. OLIVA:  That's correct, Your Honor.  And in
 7    fact, I've had the documents professionally translated.
 8            THE COURT:  Okay.  And Mr. Martinez, do you agree
 9    with the representation that's been made by Mr. Oliva
10    concerning his conversations with you in Spanish?
11            THE DEFENDANT:  Yes, Your Honor.
12            THE COURT:  And also with respect to translations
13    that have been provided to you, both by him and by a
14    professional interpreter?
15            THE DEFENDANT:  Yes, Your Honor.
16            THE COURT:  Have you had any difficulty at all in
17    communicating with your attorney?
18            THE DEFENDANT:  No, Your Honor.
19            THE COURT:  And have you had any difficulty at all
20    communicating with him either directly or through an
21    interpreter in the case where that might have happened?
22            THE DEFENDANT:  No, Your Honor.
23            THE COURT:  So it is important, as I said -- I'm
24    going to be asking you a number of questions -- so it is
25    important that if there is anything at all that you do not
```

1  understand, if you do not understand the question that I am

2  asking you or if you do not understand what I am explaining to

3  you, it is important that you let me know that.  I will be

4  happy to reword the question or explain whatever it is you do

5  not understand to the best of my ability.

6       Do I have your assurance that you will let me know

7  if there is anything that you do not understand?

8       THE DEFENDANT:  Yes, Your Honor.

9       THE COURT:  Importantly, I do not want you to answer

10  a question if you do not understand it.  So let me know before

11  you answer a question that you do not understand what I'm

12  asking.  Okay?

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  Thank you.

15       Do you understand that you have the right to be

16  represented by counsel at trial and at every other stage of

17  the proceedings, including this one today?

18       THE DEFENDANT:  Yes, Your Honor.

19       THE COURT:  Do you understand that if you cannot

20  afford counsel, that the Court may appoint counsel for you at

21  no cost to you?

22       THE DEFENDANT:  Yes, Your Honor.

23       THE COURT:  And my understanding, Mr. Oliva, is that

24  you have been retained in this matter, correct?

25       MR. OLIVA:  Yes, Your Honor, I have.

```
 1              THE COURT:  But you do understand that if at some
 2   point it becomes necessary to appoint counsel -- different
 3   counsel and you cannot afford counsel, that the Court may do
 4   so.  Do you understand that?
 5              THE DEFENDANT:  Yes, Your Honor.
 6              THE COURT:  Now, along with that right to counsel,
 7   if at any point in time during this proceeding you would like
 8   to consult with Mr. Oliva, particularly before answering a
 9   question, please let me know that I will give you the
10   opportunity to consult with him.
11              It does not matter to me how many times you ask me
12   to explain something or how many times you ask to speak with
13   Mr. Oliva.  I want you to feel satisfied that you had enough
14   time to consult with Mr. Oliva and that you understand
15   everything that's going on here today.
16              So do I have your assurance that you will let me
17   know if you need to speak to -- if you wish to speak to Mr.
18   Oliva?
19              THE DEFENDANT:  Yes, Your Honor.
20              THE COURT:  Thank you.
21              You have sworn to tell the truth.  This means that
22   if you answer any of my questions falsely, your answers later
23   may be used against you in a separate prosecution that's an
24   entirely different case from this one for the crimes of
25   perjury or of making a false statement.  Do you understand
```

1    that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  For the record, what is your full name?

4              THE DEFENDANT:  Cesar Daniel Anaya Martinez.

5              THE COURT:  How old are you now, sir?

6              THE DEFENDANT:  Thirty-seven years old.

7              THE COURT:  And what is the highest grade that you

8    completed in school?

9              THE DEFENDANT:  First.  First grade, elementary

10   school.

11             THE COURT:  Elementary school?

12             And where were you born?

13             THE DEFENDANT:  Tierra Alta, Cordoba, Colombia.

14             THE COURT:  Are you a citizen of the United States?

15             THE DEFENDANT:  No.  No, Your Honor.

16             THE COURT:  Remember, if you need to speak with your

17   attorney, that's okay.  Just let me know.  I'll give you time

18   to do that.

19             So you went to school in Colombia?

20             THE DEFENDANT:  Yes, only one year.

21             THE COURT:  Okay.  And in that one year, was that

22   sufficient for you to learn how to read and write?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  Okay.  Because sometimes in some places

25   outside of the United States, first or second grade is enough

LISA SCHMID, CCR, RMR

1    actually to learn how to read and write.  It depends on what's

2    being taught at the school.

3              But you do not feel that that's sufficient?

4              THE DEFENDANT:  No, Your Honor.  I learned over here

5    a little bit.

6              THE COURT:  Okay.  All right.  So, you completed

7    additional schooling here or you learned on your own?

8              THE DEFENDANT:  Over here, another Colombian fellow

9    helped me to learn a little bit.

10             THE COURT:  Okay.  Are you presently or have you

11   recently been under the care of a doctor for any reason?  High

12   blood pressure, diabetes, anything at all?

13             THE DEFENDANT:  No.

14             THE COURT:  Are you presently or have you recently

15   been under the care of a psychiatrist?

16             THE DEFENDANT:  No, Your Honor.

17             THE COURT:  Have you have been hospitalized or

18   treated for any mental illness?

19             THE DEFENDANT:  No, Your Honor.

20             THE COURT:  Have you ever been hospitalized or

21   treated for addiction to drugs or to alcohol?

22             THE DEFENDANT:  No, Your Honor.

23             THE COURT:  In the past 24 hours, have you consumed

24   any narcotic drugs?

25             THE DEFENDANT:  No, Your Honor.

1          THE COURT:  In the past 24 hours, have you taken any

2    kind of medications, including what might be considered

3    over-the-counter, like aspirin, Tylenol, anything like that?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  In past 24 hours, have you consumed any

6    alcoholic beverages?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  As you sit here right now, is your mind

9    clear?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  You understand what's going on here

12    today?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Mr. Oliva, have you discussed this

15    matter with your client?

16          MR. OLIVA:  Yes, Your Honor, at length.

17          THE COURT:  Okay.  We have already discussed that

18    you have done that in his native Spanish language.

19          In your opinion, is he capable of understanding the

20    nature of these proceedings?

21          MR. OLIVA:  I am.

22          THE COURT:  In your opinion, does Mr. Martinez

23    understand the rights he will be waiving by pleading guilty?

24          MR. OLIVA:  He does.

25          THE COURT:  Do you have any doubt as to Mr.

1    Martinez's competence to plead at this time?

2              MR. OLIVA:  No, Your Honor.

3              THE COURT:  Have you advised him of the maximum

4    sentence and fine that can be imposed?

5              MR. OLIVA:  I have, Your Honor.

6              THE COURT:  Have you also discussed with him the

7    operation of the advisory Sentencing Guidelines?

8              MR. OLIVA:  I have, Your Honor.

9              THE COURT:  Have you also discussed with him the

10   immigration consequences of pleading guilty?

11             MR. OLIVA:  Yes, Your Honor, I have.

12             THE COURT:  Mr. Martinez, have you had a sufficient

13   opportunity to discuss this case with your attorney?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  And are you fully satisfied with the

16   representation and advice given to you in this case by your

17   attorney?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Have you received a copy of the

20   indictment that's been filed in this case?  And just so that

21   we are clear, by indictment, I'm talking about the third

22   superseding indictment that has been filed in this case.

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Did you discuss or consult with your

25   attorney about the charges that are contained in that

1   indictment?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And just again to reiterate, I may just

4   use the word "indictment" during the course of this

5   proceeding.  When I say "indictment," I am referring to this

6   superseding indictment, just so that the record is clear.

7          Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Okay.  And specifically, did you discuss

10  with Mr. Oliva Count Number 1, which is the count to which you

11  will be pleading guilty?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Now, and Mr. Oliva, I just want, for my

14  own understanding, Count 1 charges a continuing criminal

15  enterprise, and there are alleged a number of violations.

16         Violation 1 deals with international cocaine

17  manufacturing and distribution conspiracy.  And violations 2

18  through 32, which are reflected in paragraph 11 of the

19  indictment and the chart in the indictment relates to

20  international cocaine distribution.

21         Will you be pleading guilty to any of those specific

22  violations that are contained in the indictment?

23         MR. OLIVA:  Your Honor, he's specifically -- I mean,

24  obviously, he's pleading to Count 1.

25         In terms of the actual violations, he would be

LISA SCHMID, CCR, RMR

1    pleading guilty to and in this allocution will be making

2    reference to the Violation Number 1.  And as to violation --

3    two of the violations that are in -- there are 2 to 32.

4           MS. HENRY:  I'm sorry.  May I confer with counsel

5    momentarily, Your Honor?

6           THE COURT:  Absolutely.

7           MS. HENRY:  Thank you.

8           (Confers with defense counsel.)

9           MR. OLIVA:  Sorry, Your Honor.

10          THE COURT:  That's okay.

11          MR. OLIVA:  And I was reminded that, in fact, what

12   he is pleading to Count 1, and that it is not necessarily

13   required that he has to plead to every single one of those

14   violations, but he is going to be pleading to Count 1 and

15   allocuting sufficiently to justify his plea to Count 1.

16          THE COURT:  Okay.  But he has to allocute to some

17   allegation --

18          MR. OLIVA:  And he will be doing that.

19          THE COURT:  -- that's contained -- and we have gone

20   through this before.

21          MS. HENRY:  Yes, Your Honor.  He is going to be

22   allocuting to three violations of the federal narcotics laws,

23   and I believe when Your Honor listens to the allocation in

24   which he will detail his violation of the federal narcotics

25   laws, it will, in fact, meet the elements of a continuing

1   criminal enterprise that's charged in Count 1.

2           THE COURT:  My question was whether any of those

3   violations are actually contained in the indictment.

4           We have had this discussion previously -- obviously

5   on the record in this case about pleading to -- since the

6   government doesn't have to plead each and every violation in

7   the indictment, that the defendant can plead guilty to an

8   allegation -- a violation that's not necessarily contained in

9   the indictment.

10          But for ease of reference, if it is contained in the

11  indictment, it would be a lot easier for the allocution.

12          MS. HENRY:  Understood, Your Honor.

13          It is my understanding -- and Mr. Oliva can confirm

14  this -- that the defendant will be pleading to violations that

15  are not stated in the indictment.

16          THE COURT:  Okay.  All right.  That is what I was

17  getting at.  Okay.

18          I don't know, Mr. Martinez, whether you have been

19  able to understand what we were just discussing here.  You

20  understand what we've been discussing?

21          THE DEFENDANT:  (No response.)

22          THE COURT:  Would you like to consult with your

23  attorney, because you're looking at me a little confused?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Yes.  Why don't you perhaps explain to

1  him, Mr. Oliva, what we were discussing.

2           MR. OLIVA:  (Confers with the defendant.)

3           Yes, Your Honor.  I've explained it to him.

4           THE COURT:  It's a little bit complicated, and so I

5  can understand any confusion that he might have.

6           And like I said, if there's anything you do not

7  understand, just let me know.

8           There is an introduction that is incorporated into

9  count 1 that describes Los Urabeños, a drug trafficking

10 organization.

11          And Mr. Oliva, have you discussed that introduction

12 with Mr. Martinez?

13          MR. OLIVA:  I have, Your Honor.

14          THE COURT:  Okay.  And Mr. Martinez, do you want me

15 to go through that introduction with you?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  Okay.  So I just want to jump right into

18 Count 1, which is the substantive count, and that charges you

19 with a continuing criminal enterprise as follows.  As I said,

20 that introduction is incorporated into Count 1 at paragraphs

21 one through seven of the superseding indictment.

22          And it alleges that in or about and between

23 June 2003 and December 2014, both dates being approximate and

24 inclusive.  That means including that time period, but it

25 could be above that time.  So a little bit before, maybe a

LISA SCHMID, CCR, RMR

1    little bit after.

2           Within the extraterritorial jurisdiction of the

3    United States, the defendants, Dario Antonio Usuga-David, also

4    known as "Otoniel," "Mao," "Gallo," and "Mauricio-Gallo,"

5    Daniel Rendon-Herrera, also known as "Don Mario," Jairo De

6    Jesus Durango Restrepo, also known as "Gua Gua," Roberto

7    Vargas Gutierrez, also known as "Gavilan," Carlos Alberto

8    Moreno Turberquia, also known as "Nicolas," Aristides Manuel

9    Mesa Paez, also known as "El Indio," Luis Orlando Padierna

10   Pena, also known as "Inglaterra," Jobanis De Jesus a Vila

11   Villadiego, also known as "Chiquito" and "Chiquito Malo,"

12   Cesar Daniel Anaya Martinez, also known as "Tierra," Jhoni

13   Alberto Grajales, also known as "Guajiro," Ramiro Caro Pineda,

14   also known as "Nolasco" and "Hugo," together with others, did

15   knowingly and intentionally engage in a continuing criminal

16   enterprise, in that these defendants who I have just named,

17   committed violations of Title 21, United States Code, Sections

18   846, 848(e), 952(a), 959(a), 960 and 963, including violations

19   1 through 33 set forth below -- that's contained within Count

20   1, as I mentioned earlier -- which violations were part of a

21   continuing series of violations of those statutes undertaken

22   by the defendants that I have just named, in concert with five

23   or more other persons with respect to whom the defendants,

24   Dario Antonio Usuga-David, Daniel Rendon-Herrera, Jairo De

25   Jesus Durango Restrepo, Roberto Vargas Gutierrez, Carlos

1    Alberto Moreno Turberquia, Aristides Manuel Mesa Paez, Luis

2    Orlando Padierna Pena, Jobanis De Jesus a Vila Villadiego,

3    Cesar Daniel Anaya Martinez, Jhoni Alberto Grajales, and

4    Ramiro Caro Pineda, occupied a supervisory and management

5    position, and from which continuing series of violations, the

6    defendants, Dario Antonio Usuga-David, Daniel Rendon-Herrera,

7    Jairo De Jesus Durango Restrepo, Roberto Vargas Gutierrez,

8    Carlos Alberto Moreno Turberquia, Aristides Manuel Mesa Paez,

9    Luis Orlando Padierna Pena, Jobanis De Jesus a Vila

10   Villadiego, Cesar Daniel Anaya Martinez, Jhoni Alberto

11   Grajales, and Ramiro Caro Pineda, obtained substantial income

12   and resources.

13        The continuing series of violations as defined by

14   Title 21 of the United States Code, Section 848(c), included

15   the violations 1 through 33 that are set forth in the

16   indictment.

17        Violation 1 charges an international cocaine

18   manufacturing and distribution conspiracy.  And that in or

19   about and between June 2003, and December 2014, both dates

20   being approximate and inclusive, within the extraterritorial

21   jurisdiction of the United States, and the defendants, Dario

22   Antonio Usuga-David, also known as "Otoniel," "Mao," "Gallo,"

23   and "Mauricio-Gallo," Daniel Rendon-Herrera, also known as

24   "Don Mario," Jairo De Jesus Durango Restrepo, also known as

25   "Gua Gua," Roberto Vargas Gutierrez, also known as "Gavilan,"

1  Carlos Alberto Moreno Turberquia, also known as "Nicolas,"

2  Aristides Manuel Mesa Paez, also known as "El Indio," Luis

3  Orlando Padierna Pena, also known as "Inglaterra," Jobanis De

4  Jesus a Vila Villadiego, also known as "Chiquito" and

5  "Chiquito Malo," Cesar Daniel Anaya Martinez, also known as

6  "Tierra," Jhoni Alberto Grajales, also known as "Guajiro,"

7  Ramiro Caro Pineda, also known as "Nolasco" and "Hugo,"

8  together with others, did knowingly and intentionally conspire

9  to manufacture and distribute five kilograms or more of a

10  substance containing cocaine, a Schedule II controlled

11  substance, intending and knowing that such substance would be

12  unlawfully imported into the United States from a place

13  outside thereof, in violation of Title 21 of the United States

14  Code, Sections 959(a), 959(c), 960(a)(3), 960(b)(1)(B)(ii),

15  and 963.

16          You understand these charges so far?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Violations 2 through 32 involved

19  international cocaine distribution.

20          And am I correct, Ms. Henry, that it concerns the

21  same defendants that I have already recited?

22          MS. HENRY:  Yes, Your Honor.

23          THE COURT:  Okay.  So involving the same defendants

24  that I just recited in connection with Violation 1, it is

25  alleged that these defendants, together with others, did

1   knowingly and intentionally distribute a controlled substance,

2   intending and knowing that such substance would be unlawfully

3   imported into the United States from a place outside thereof,

4   which offenses involved a substance containing cocaine, a

5   Schedule II controlled substance, in the amounts that are

6   listed in the chart that follows below, contrary to Title 21

7   of the United States Code, Sections 959(a), 959(c), 960(a)(3),

8   and 960(b)(1)(B)(ii), and Title 18 of the United States Code

9   Section 2, which is the aiding and abetting statute.

10          So all of these different violations that are listed

11   in the chart involve differing amounts of cocaine, all over

12   one thousand kilograms of cocaine on various different dates.

13          Have you reviewed this chart with Mr. Martinez?

14          MR. OLIVA:  Yes, Your Honor.

15          THE COURT:  Mr. Martinez, are you familiar with the

16   chart and the different dates and the different amounts of

17   cocaine that are alleged to have been involved in the

18   international cocaine distribution charge?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Okay.  Do you want me to go through them

21   all specifically with you?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Okay.  Do you have any questions at all

24   about this charge?

25          THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Now, again, I remind you that if there

2   is anything that I say that you do not understand, please let

3   me know, and the reason why I say that is because I'm about to

4   explain the rights that you have and that any person has under

5   the Constitution and laws of the United States when they are

6   charged with a crime in the United States.

7          And it's important that you understand these rights

8   because when you plead guilty, we say you waive or you give up

9   these rights.  Do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  The first and the most important thing

12   that you must understand is that you do not have to plead

13   guilty even if you are guilty, and that's because under our

14   legal system, the prosecutor or the government has the burden

15   of proving the guilt of a defendant beyond a reasonable doubt.

16   And if the prosecutor cannot or does not meet her burden of

17   proof, then the jury has the duty to find the defendant not

18   guilty, even if the defendant is guilty?

19          Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  What this also means is that even if you

22   are guilty, you have a choice.  And it is up to you to decide

23   what to do -- not your lawyer, not your family, not your

24   friends or anyone else.

25          You may choose to withdraw your previously-entered

1  plea of not guilty and plead guilty, as you apparently wish to

2  do today, or you may choose to go to trial simply by

3  persisting in your plea of not guilty, and make the government

4  meet its burden of proving your guilt beyond a reasonable

5  doubt.

6         Do you understand that?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  If you plead guilty -- if you plead not

9  guilty, excuse me, under the Constitution and laws of the

10 United States, you are entitled to a speedy and a public trial

11 by a jury with the assistance of counsel on the charges

12 contained in the indictment filed with the court.  Do you

13 understand that?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  And at the trial, you would be presumed

16 innocent.  You would not have to prove that you are innocent,

17 because it is the government's burden to overcome that

18 presumption of innocence and prove you guilty by competent

19 evidence -- that means admissible evidence -- and beyond a

20 reasonable doubt.  Do you understand that?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  If the government does not meet its

23 burden, the jury would have the duty to find you not guilty.

24 Do you understand that?

25        THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  By pleading guilty, you are giving up

2     your right to have the government satisfy its burden that you

3     are guilty beyond a reasonable doubt.  Do you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  In the course of the trial, the

6     witnesses for the government would have to come to court and

7     testify in your presence.

8          Your attorney would have the right to cross-examine

9     the witnesses for the government.  He could object to any

10    evidence offered by the government, and he could offer

11    evidence on your behalf.  That would include the right to

12    subpoena or compel witnesses to come to court and testify, and

13    it would include the right to raise any defenses that you may

14    have under the law.  Do you understand that?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  By pleading guilty, and if I accept your

17    plea, you give up your right to confront the witnesses who

18    would testify against you.  You also give up your right to

19    offer any evidence on your own behalf.  You give up your right

20    to compel witnesses to come to court and testify, and you give

21    up your right to raise any defenses that you may have under

22    the law.  Do you understand that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  At a trial, you have the right to

25    testify on your own behalf, but only if you chose to do so.

1    You are not required to testify.

2              Under the Constitution of the United States, a

3    defendant in a criminal case cannot be forced to take the

4    witness stand at his trial and say anything that could be used

5    against him to show that he is guilty of the crime with which

6    he is charged.

7              If you decided not to testify, then I would instruct

8    the jury that they could not hold your silence against you.

9    This is called your right of against self-incrimination.  Do

10   you understand this right?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  By pleading guilty, you are admitting

13   your guilt by your own mouth, and you give up your right

14   against self-incrimination.  Do you understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  If you plead guilty, I must ask you

17   questions about what you did in order to satisfy myself that

18   you, in fact, are guilty of the charge to which you are

19   pleading guilty, and you will have to answer my questions

20   truthfully and acknowledge your guilt.

21             In that regard, I remind you that you have taken an

22   oath to answer my questions truthfully.  Do you understand

23   that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  In other words, it is not enough just to

1    say that you are guilty.  You must tell me what it is that you

2    did that makes you guilty of the particular charge to which

3    you are pleading guilty.  Do you understand that?

4                THE DEFENDANT:  Yes, Your Honor.

5                THE COURT:  If you plead guilty and I accept your

6    plea, you will be giving up your constitutional right to a

7    trial, and all the other rights that I have just discussed.

8    There will be no further trial of any kind.  I will simply

9    enter a judgment of guilty on the basis of your guilty plea.

10   Do you understand that?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  If you decided to go to trial and the

13   jury found you guilty, you could appeal both the verdict and

14   the sentence.  In fact, if you went to trial and your attorney

15   made motions and I ruled against you on those motions, then

16   you could appeal from my rulings on those motions.  You could

17   also appeal from any of the evidentiary rulings that I might

18   make during the course of the trial.

19               However, by pleading guilty and by entering into

20   this plea agreement that is before the Court, you will have

21   waived or given up your right to appeal regardless of what

22   sentence the Court imposes.  Do you understand that?

23               THE DEFENDANT:  Yes, Your Honor.

24               THE COURT:  In addition, by entering into this plea

25   agreement, you also further waive the right to raise on

```
 1    appeal or on collateral review -- that's like habeas corpus or
 2    coram nobis -- any argument that the statute that you are
 3    pleading guilty to -- the statute that you are pleading guilty
 4    to is unconstitutional, and that the conduct that you're
 5    admitting to does not fall within the scope of those statutes.
 6    Do you understand that?
 7                THE DEFENDANT:  Yes, Your Honor.
 8                THE COURT:  This waiver does not preclude you from
 9    raising any claim of ineffective assistance of counsel in an
10    appropriate forum.  You understand that?
11                THE DEFENDANT:  Yes, Your Honor.
12                THE COURT:  In addition -- we'll get to that later.
13                Are you willing to give up your right to a trial and
14    the other rights that I have just discussed?
15                THE DEFENDANT:  Yes, Your Honor.
16                THE COURT:  Now, I referred to a plea agreement, and
17    I have a document before me that's been marked Government
18    Exhibit Number 1.  It consists of multiple pages.  The last
19    page has today's date.
20                And Ms. Henry, is that your signature at the upper
21    right-hand corner?
22                MS. HENRY:  Yes, Your Honor.
23                THE COURT:  And whose signature is that below yours?
24                MS. HENRY:  Gina Parlovecchio, Supervising Assistant
25    United States Attorney.
```

```
 1            THE COURT:  Okay.  Thank you.
 2            Right below Ms. Parlovecchio's signature, there is a
 3  very brief typewritten paragraph that reads as follows:  I
 4  have read the entire agreement and discussed it with my
 5  attorney.  I understand all of its terms and am entering into
 6  it knowingly and voluntarily.
 7            Mr. Martinez, is that your signature there below
 8  that paragraph?
 9            THE DEFENDANT:  Yes, Your Honor.
10            THE COURT:  And below Mr. Martinez's signature,
11  Mr. Oliva, is that your signature?
12            MR. OLIVA:  It is, Your Honor.
13            THE COURT:  And it's my understanding based on what
14  you stated previously, that this plea agreement has been
15  translated into Spanish for Mr. Martinez?
16            MR. OLIVA:  That is correct, Your Honor.  It was
17  provided to him, but besides that, obviously, I did go over it
18  with him in Spanish at length --
19            THE COURT:  Okay.
20            MR. OLIVA:  -- back then.
21            THE COURT:  Thank you.
22            So Mr. Martinez, do you agree that you have been
23  able to review the terms that are in this written plea
24  agreement with the assistance of the interpretation or --
25            Was this formally translated by an interpreter?
```

1                MR. OLIVA:  Correct.

2                THE COURT:  Okay.  So you have -- is it true you had

3    the assistance of a Spanish language interpreter to translate

4    the plea agreement for you?

5                MR. OLIVA:  He didn't.  I had it translated outside,

6    in writing.

7                THE COURT:  Oh, okay.  So let me rephrase the

8    question.  Thank you for the clarification.

9                So was this plea agreement provided to you in

10   Spanish?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  Okay.  And did you review it with your

13   attorney?

14               THE DEFENDANT:  Yes, Your Honor.

15               THE COURT:  And were you -- did you review all of

16   the terms that are in that plea agreement?

17               THE DEFENDANT:  Yes, Your Honor.

18               THE COURT:  Do you understand all of the terms that

19   are in that plea agreement?

20               THE DEFENDANT:  Yes, Your Honor.

21               THE COURT:  And does this written plea agreement

22   accurately represent the entire understanding or agreement

23   that you have reached with the government?

24               THE DEFENDANT:  Yes, Your Honor.

25               THE COURT:  And Mr. Oliva, you have indicated that

1   you have reviewed this plea agreement.  Obviously, you have

2   read it and reviewed it with your client, correct?

3           MR. OLIVA:  Correct, Your Honor.

4           THE COURT:  And you also indicated that you had it

5   professionally translated for him.

6           Does it reflect your understanding of the entire

7   agreement that your client has reached with the government,

8   Mr. Oliva?

9           MR. OLIVA:  Yes, Your Honor.  It does.

10          THE COURT:  And does this plea agreement reflect the

11  government's understanding of the entire agreement it has

12  entered into with Mr. Martinez and Mr. Oliva?

13          MS. HENRY:  Your Honor, the answer is yes with

14  respect to the Eastern District of New York.  This is the

15  written agreement that the defendant has reached with the

16  government in this district.

17          It's the government's understanding -- and we're

18  just going to make the record today -- after conferring with

19  my colleagues in the Southern District of Florida where

20  Mr. Anaya Martinez is also charged, it is our understanding

21  here that upon their receipt of my notification regarding this

22  guilty plea, that they will then move to dismiss the

23  indictment against him in the Southern District of Florida;

24  however, the terms of that are between Mr. Anaya Martinez in

25  the Southern District and Florida, and are not included in the

1    written agreement that's being presented today.

2         THE COURT:  Is it once he enters the plea here and I

3    accept the plea or upon sentencing?

4         MS. HENRY:  It's our understanding that upon his

5    entering and you accepting the plea.

6         THE COURT:  Okay.

7         MS. HENRY:  And me notifying them of the same.

8         THE COURT:  Okay.  And is that your understanding,

9    Mr. Oliva, as well?

10        MR. OLIVA:  Yes, Your Honor.

11        THE COURT:  Okay.  Mr. Martinez, do you understand

12   what has been said here?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  Okay.  And so just to be clear, there

15   is -- you have a separate pending case in the Southern

16   District of Florida.  You understand that?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  And there's been some agreement that's

19   been reached that the case in the Southern District of Florida

20   will be dismissed upon the government in this case, here in

21   the Eastern District of New York, notifying the prosecutor in

22   the Southern District of Florida, that you have pled guilty,

23   and that I have accepted your plea of guilty.  Is that your

24   understanding as well?

25        THE DEFENDANT:  Yes, Your Honor.

1           THE COURT:  Okay.  Because that term is not -- what

2    the government has explained, is that that agreement is not

3    reflected in the written plea agreement that you signed.  Do

4    you understand that?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Okay.  Now, before I actually explain

7    the sentencing scheme that is applicable here -- and that's

8    laid out for you in the written plea agreement as well -- I

9    just want to explain some things to you from a practical point

10   of view.

11          If I accept your plea of guilty today, and by a

12   separate order -- I'm going to have a separate scheduling

13   order, and I will direct the Department of Probation to

14   prepare what's called a Pre-sentence Report or a PSR that will

15   assist the Court in sentencing.

16          It will set a date for the disclosure of that

17   Pre-sentence Report, and it will -- and that's not a date to

18   come to court.  It can take -- this is a complicated case.  It

19   can take a lot more than 12 weeks to prepare a Pre-sentence

20   Report in this case.

21          And it will -- the scheduling order will also set a

22   second date, will be the date -- which will be the date for

23   the sentencing hearing, and you'll come to court on that day.

24   We'll have an interpreter, your lawyer.  Probation will be

25   here, the government and I will be here on that day.

1          The Pre-sentence Report is a very important

2    document.  They're going to interview -- Probation will

3    interview you.  We will notify them that you need the

4    assistance of the interpreter.

5          You have a right to have your attorney present at

6    that interview.  I strongly advise you that you have your

7    attorney present at that interview because they're going to

8    discuss everything with you from the time you were born, your

9    life in Colombia, any time you spent here in the United

10   States, your education, your health, any jobs that you held,

11   your finances -- all of that is going to be discussed with

12   you.  Whether or not you had any drug addiction, your mental

13   health, they're going to discuss all of that with you.  So it

14   is important that you have your attorney present for the

15   interview.

16         And as you can understand, all this information is

17   very important because when I impose sentence, I'm not

18   imposing sentence on a piece of paper or on a case number.  It

19   is on a human being.  So it will tell me who is Mr. Martinez.

20         They are also going to talk to the government to

21   find out what the evidence was in this case, what their proof

22   was.  And they'll lay out what the offense conduct is and any

23   relevant conduct pertinent to sentencing.  In addition,

24   Probation is going to come up with its own calculation as to

25   what the Sentence Guideline range should be.

```
1              I'm sure that Mr. Oliva has explained this to you
2     already, but the Guidelines are advisory.  They are not
3     binding on the Court.  Probation is an arm of the Court.
4     Probation does not work for defense counsel.  Probation does
5     not work for the government.  Probation is part of the Court.
6              So to assist the Court in sentencing, Probation is
7     going to do its own calculation, looking at the Sentencing
8     Guidelines that are advisory, and making that calculation of
9     what the range should be, looking at the offense conduct, and
10    also determining whatever your Criminal History Category is,
11    what your prior criminal history is.
12             In addition, Probation is going to make a
13    determination as to whether or not any facts exist that would
14    justify what's called a downward departure within the advisory
15    Guidelines, either above the Guideline range or below the
16    Guideline range.
17             In addition, because the Court has to consider
18    3553(a) factors to determine whether a variance or a sentence
19    completely outside of the advisory Guidelines system is
20    appropriate, they're going to make a notation of any factors
21    they find that they think are relevant with the Court's
22    determination as to whether a non-Guidelines sentence is
23    appropriate, either above the Guideline range or below the
24    Guideline range.  You follow me so far?
25             THE DEFENDANT:  Yes, Your Honor.
```

1          THE COURT:   Okay.   Probation is also going to make a

2     recommendation to the Court as to what sentence they think is

3     appropriate under all of the circumstances of this case.

4          Once that is prepared, it will be disclosed to you,

5     your attorney, the government, and to the Court.   All of us

6     will have an opportunity to review it, to object to anything

7     we think is incorrect in that report.   And if we have to have

8     a hearing, we'll have a hearing on anything that is in

9     dispute, on any fact that is in dispute.

10          Because I also have to consider other factors

11     besides just the Guidelines range, I always ask the attorneys

12     to give me something in writing, so that they can make a

13     recommendation to the Court as to what they think is a

14     reasonable sentence under all of the circumstances, and

15     explain the reasons what they believe that is the case.   On

16     the date of -- so all of that will happen before the date of

17     sentence.

18          At the date of the sentencing hearing, to the extent

19     that there were still any outstanding objections to the

20     Pre-sentence Report, I will resolve those objections if we do

21     not need to have a hearing.

22          It will be at that time and not before that time

23     that I will make the determination as to what the Guideline

24     range should be in this case.   It could be that my

25     determination -- I should say this, that when Probation

1    calculates its Guidelines range, they might agree with your

2    attorney.  They might disagree with your attorney.  Probation

3    might agree with the government.  They might disagree with the

4    government.

5           When we come to that date of sentence, it's my job

6    at that point to determine what the Guideline range should be.

7    I might agree with your attorney.  I might disagree with him.

8    I might agree with the government.  I might disagree with the

9    government.  I might agree with Probation.  I might disagree

10   with Probation.  I will have to come up with the Guideline

11   range I believe is reasonable under all the circumstances of

12   the case.

13          So until that date of sentence -- and sometimes I

14   need to hear argument from the attorneys in that regard.  So

15   sometimes, even I'm not one hundred percent sure of what the

16   Guidelines will be before I hear from them on the sentence

17   hearing date.  Do you understand that so far?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  So until that time, we're not going to

20   know what the Guideline range is.

21          In addition, because I need to consider departures

22   within the advisory Guideline system, and I also have to

23   consider these 3553(a) factors, to determine whether or not a

24   sentence completely outside of the Guidelines is appropriate,

25   I will hear from the lawyers, and they're going to make

1   arguments to me as what sentence they think is appropriate

2   under all of the circumstances, and why.

3          The law gives you the right to make a statement to

4   the Court after I hear from the lawyers, then I will hear from

5   you if you wish to make a statement.  So it is not until all

6   of that has happened that I actually will impose sentence.

7          So I explain this to you for a couple of reasons.

8   One, especially because you are in custody, and I have found

9   over time that when defendants plead guilty -- and the

10  majority of the defendants do plead guilty -- and they're in

11  custody, they get very concerned when they haven't come to

12  court for three months or longer if it's a very complicated

13  case, and they think that nothing is happening and that people

14  have forgotten about them, but that's not the case.  There is

15  a lot of work that is going on to get the case ready for

16  sentencing.  So I want you to understand what that process is.

17  So that's one reason.

18         The other reason is that I want you to understand

19  that as I sit here today, I have no clue what sentence I will

20  be imposing because I don't have any of this information.  I

21  have none of it.  So, at this point, I cannot say what

22  sentence I will be imposing.  I have to wait to get all of

23  this information before I can make that decision.  Do you

24  understand that?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  But, the obligation that I have today,

2     as I sit here, is to make sure that you do understand all of

3     the consequences of pleading guilty.  Okay?  So that's my job

4     today.

5          I do not want you to assume from anything that I

6     have said already or that I will say that I have already made

7     up my mind about what sentence I will be imposing, because I

8     just don't have the information necessary to make that

9     decision.  But I do want to make sure you understand all of

10    the consequences of pleading guilty.  Do you understand that?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Okay.  I know it's a very long and

13    complicated explanation.  Okay?  But I want to make sure that

14    you understand not only what my obligation is today, but

15    what's going to come afterwards.  Okay?

16         So going back to the plea agreement and the

17    sentencing scheme that is applicable here, with respect to

18    Count 1, the minimum term of imprisonment is 20 years.  The

19    maximum term of imprisonment is life.

20         The plea agreement notes that it is the parties'

21    understanding and it is also the Court's understanding that

22    when the United States requests a defendant be produced from

23    the Republic of Colombia by extradition, that the United

24    States agrees that it will not seek a sentence of life

25    imprisonment, and although this charge that you're pleading

1    guilty to carries a maximum sentence of life, the government

2    will not seek a sentence of life in this case.  Do you

3    understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Now, the Court has the discretion at

6    sentencing under the law as it exists now to impose a life

7    sentence if it deems it appropriate; however, the law also

8    says that the Court has to take into consideration the

9    extradition treaties and the purposes of the extradition

10   treaties that are in effect, and the goals of that extradition

11   treaty.  So the Court is mindful of those goals and of those

12   terms.  Do you understand that?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Okay.  I know it's a little bit

15   complicated, but I want you to be clear that while the

16   government makes that representation that it will not seek

17   life, the Court always has that discretion to impose that term

18   if it believes it is appropriate under all of the

19   circumstances of the case, but the circumstances of the case

20   also include the terms of the treaty between the United States

21   and Colombia as far as as extradition is concerned.  Do you

22   understand that?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Okay.  Are the lawyers in agreement that

25   that's the state of the law at this juncture?

1          MS. HENRY:  Yes, Your Honor.

2          MR. OLIVA:  Yes, Your Honor.

3          THE COURT:  Mr. Oliva?  Thank you.

4          Now, if I were to impose a term of imprisonment, I

5   also would impose a term of supervised release.  The minimum

6   term that I could impose is five years, and the maximum term

7   would be life.

8          So what that means is, assuming that you do not get

9   deported -- and we'll talk about that more in a minute -- you

10  would come under the supervision of the Department of

11  Probation.

12         There also could be reasons why I want to impose a

13  term of supervised release even if you are deported, for

14  example, to avoid any illegal re-entry in the future.

15         But the idea is that would you would come under the

16  supervision of the Department of Probation.  They impose

17  certain conditions of supervision, for example, that you

18  not -- that you report on a regular basis.  I may impose

19  certain special conditions of supervised release, for example,

20  that you not possess a firearm.

21         If you were to violate any of the conditions of your

22  supervised release, then you could receive an additional jail

23  sentence up to five years of incarceration, and you would not

24  get credit for the time you already spent in jail on your

25  original jail sentence.  You would not get credit for any time

1    you already spent on supervised release, even if you were

2    close to the end of your supervised release term.  Do you

3    understand that?

4                THE DEFENDANT:  Yes, Your Honor.

5                THE COURT:  There is a maximum fine of $2 million,

6    and again, the Pre-sentence Report is going to tell me about

7    your finances and whether or not you are able to pay a fine

8    and if so, how much.

9                Restitution does not apply in this case.

10               There is a $100 special assessment that I must

11   impose.  Those are court costs.

12               In addition, because you are not a citizen of the

13   United States and by entering into this plea agreement, you

14   indicated that you understand that by pleading guilty to the

15   particular charge here, that removal is presumptive?  In other

16   words, it would be mandatory removal to your country of

17   origin.  Do you understand that?

18               THE DEFENDANT:  Yes, Your Honor.

19               THE COURT:  And understanding that, do you still

20   wish to enter a plea of guilty?

21               THE DEFENDANT:  Yes, Your Honor.

22               THE COURT:  There is also a criminal forfeiture that

23   you have consented to.  You have consented to give up certain

24   assets or properties or funds that were the proceeds of the

25   illegal activity that you are admitting to having engaged in.

1          That means that you give up your right not only to

2    have any notice of any forfeiture proceedings, but to have a

3    jury determine the issue or to have a hearing on any issue

4    concerning forfeiture.

5          You agree to cooperate with the government in

6    obtaining whatever assets in order to comply with the asset

7    forfeiture that is being sought by the government.

8          And based on the agreement, you have agreed to the

9    entry of a Forfeiture Money Judgment in the amount of

10   $2,200,000.

11         And I noted that in the plea agreement, there was a

12   change from the draft that I was given that -- extending the

13   date by which Mr. Martinez would pay $50,000 as an initial

14   payment towards the Forfeiture Money Judgment to May 31 of

15   2019.

16         And are the parties' initials indicated there?

17         MS. HENRY:  Yes, Your Honor.

18         MR. OLIVA:  Yes, Your Honor.

19         THE COURT:  And Mr. Martinez, are your initials -- I

20   see initials "CA" there.  Are those your initials?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Okay.  So I did receive a draft Order of

23   Forfeiture, which does not contain this amended date.  So I'm

24   just going to return this back to you, so that that could be

25   corrected.

```
 1              And the only other question that I had about the

 2    Forfeiture Order is that it does not contain the waiver

 3    language that is in the plea agreement in paragraph eight, in

 4    terms of consequences to the defendant if he fails to pay any

 5    portion of the Forfeiture Money Judgment on before the dates

 6    that are indicated in the plea agreement, and/or in connection

 7    with certain Colombian assets.

 8              So it has been determined that there are some assets

 9    that you have in Columbia that is incorporated in a notice

10    that was also referred to in the plea agreement that's been

11    provided in translation and in Spanish to the Court.

12              So I don't know if the parties' understanding about

13    that waiver, whether it should be included in the Forfeiture

14    Money Judgment.

15              MS. HENRY:  Your Honor, given that we need to amend

16    the draft order anyway, I would confer with my asset

17    forfeiture colleagues and ensure that all the appropriate

18    language is included.

19              THE COURT:  Yes.  Because otherwise, it just says --

20    it would be in conflict with what the plea agreement says.

21    And I think that that might be a little bit confusing.  So

22    I'll just return that to the government.

23              And if I could have the revised forfeiture agreement

24    by May 31st --

25              MS. HENRY:  Yes, Your Honor.
```

1          THE COURT:  -- that will give you time to have

2     Mr. Oliva review it with his client as well.

3          MR. OLIVA:  Thank you, Your Honor.

4          THE COURT:  Do you have any questions at all thus

5     far about anything that I have explained to you about your

6     rights or sentencing or anything of that nature, what the

7     statute provides?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Okay.  So I have told you that the

10    statute carries with it a minimum of 20 years and a maximum of

11    life, and I have also explained to you the whole sentencing

12    process maybe in a very detailed, long way, but so that you

13    understand that until the date of sentence, you're not going

14    to know what the Guidelines range is going to be under the

15    advisory Guideline system, whether there are going to be any

16    departures that will apply under the advisory Guideline

17    system, either above or below the Guideline range, or whether

18    there's going to be a non-Guidelines system that would

19    apply -- sentence that should be imposed based on the Court's

20    analysis of 3553(a) factors warranting the imposition of a

21    non-Guidelines sentence.

22          Nonetheless, at this time, I am going to ask the

23    parties to give me their best estimate as to what the

24    Guidelines are likely to say, based upon the facts that are

25    available to them at this point in time.  Please keep in mind

1    that this is an estimate that could be wrong.  Do you

2    understand that?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  What is the government's estimate as to

5    where within the Guidelines Mr. Martinez will fall?

6                MS. HENRY:  Your Honor, the government estimates

7    that the Guidelines range in this case is life imprisonment.

8                MR. OLIVA:  The defense concurs.

9                THE COURT:  And also in connection with the

10   Guidelines, you have also, by entering into this plea

11   agreement, have agreed that the Guideline range and the

12   statutory mandatory minimum sentence should be calculated

13   based on a quantity and drug type of at least 50,000 kilograms

14   of cocaine.  Do you understand that?

15               THE DEFENDANT:  Yes, Your Honor.

16               THE COURT:  And do you understand that by entering

17   into this plea agreement, you are further stipulating that

18   certain Guideline enhancements are warranted:  First, a

19   two-level increase pursuant to Guideline 2D1.5(b)(1), for

20   possession of ha firearm.

21               And that would be for possession of a firearm in

22   connection with a drug trafficking offense, correct, Ms.

23   Henry?

24               MS. HENRY:  Yes, Your Honor.

25               THE COURT:  And two-level increase pursuant to

1    Guideline 2D1.5(b)(2), for the use of violence and directing

2    the use of violence.

3            And an additional two-level increase pursuant to

4    Guideline 2D1.5B(11), for the bribery of law enforcement

5    officers.

6            Do you understand that you're stipulating that those

7    enhancements would apply?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Again, keeping in mind that I'm the

10   final -- I make the final determination as to what

11   enhancements apply or do not apply, and what the Guideline

12   range is.  You understand that?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  And it could be that I agree with the

15   parties or I'll disagree with the parties.  Do you understand

16   that?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Do you understanded that these estimates

19   are not binding on the government, Probation or the Court?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Do you also understand that if this

22   estimate is wrong, that you will not be permitted to withdraw

23   your plea of guilty?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  And do you have any questions that you

1  would like to ask me about the charge or your rights or

2  anything at all relating to this matter?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Mr. Oliva, do you know of any reason why

5  your client should not plead guilty?

6          MR. OLIVA:  No, Your Honor.

7          THE COURT:  Are you aware of any viable legal

8  defense to the charge?

9          MR. OLIVA:  No, Your Honor.

10         THE COURT:  Mr. Martinez, are you ready to plead at

11  this time?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you wish to consult with your

14  attorney before pleading?

15         THE DEFENDANT:  No, Your Honor.

16         THE COURT:  And what is your plea of guilty to Count

17  Number 1 of the indictment that charges you with a continuing

18  criminal enterprise, guilty or not guilty?

19         THE DEFENDANT:  Guilty, Your Honor.

20         THE COURT:  Are you pleading guilty voluntarily and

21  of your own free will?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Has anyone threatened or forced you to

24  plead guilty?

25         THE DEFENDANT:  No, Your Honor.

```
 1              THE COURT:  Other than the promises that are
 2   contained in the written plea agreement, has anyone made any
 3   other promises to you to get you to plead guilty?
 4              THE DEFENDANT:  No, Your Honor.
 5              THE COURT:  Has anyone made any promise to you as
 6   the what your final sentence will be?
 7              THE DEFENDANT:  No, Your Honor.
 8              THE COURT:  Do you wish for me to review the charge
 9   with you again?
10              THE DEFENDANT:  No, Your Honor.
11              THE COURT:  At this time, I would like for you to
12   describe for me in your own words what it is that you did in
13   connection with the acts that are charged in Count Number 1.
14              Does he have a written statement, Mr. Oliva?
15              MR. OLIVA:  He does, Your Honor.
16              THE COURT:  Okay.  Is he going to be able to read it
17   himself?
18              MR. OLIVA:  With some difficulty, but yes.
19              THE COURT:  Okay.  Did you assist in the preparation
20   of this written plea agreement, Mr. Martinez?
21              THE DEFENDANT:  Yes, Your Honor.
22              THE COURT:  Okay.  So, just take your time, and the
23   Spanish interpreter may tap you on the arm or use whatever
24   signal he has to let you know that you need to stop, so that
25   he can translate what you are saying for us, for the record.
```

```
 1    Okay?  So just take your time.  Whenever you are ready.
 2              MR. OLIVA:  (Consulting with the defendant.)
 3              THE COURT:  If he has too much difficulty, do you
 4    want to -- I'm just concerned about what he mentioned earlier
 5    about his ability to read and write.
 6              MR. OLIVA:  I mean, Your Honor, quite frankly, he
 7    has read it slowly.  I have discussed it with him and, you
 8    know, everything in that document is something that he has --
 9              THE COURT:  Okay.  He can just read it slowly.
10              MR. OLIVA:  But it will be hard for him to read
11    that.  That's why he's smiling, by the way.  It's not any
12    disrespect to the Court.
13              THE COURT:  I understand.  I understand where he is
14    coming from.
15              MR. OLIVA:  He's embarrassed by his lack of
16    literacy.
17              THE COURT:  I understand where he is coming from.
18              MR. OLIVA:  I appreciate that very much.
19              THE COURT:  I understand.  I know he does not mean
20    any disrespect.  He might be a little bit nervous, too, which
21    is understandable.
22              MS. HENRY:  Your Honor, may I confer with counsel to
23    --
24              THE COURT:  Absolutely.  I just want to find a way
25    to accommodate this, so that it will be easier on him.
```

```
1              MS. HENRY:  (Confers with Mr. Oliva.)

2              So Judge, in order to accommodate this issue, would

3    it be possible to -- given that Mr. Anaya Martinez does

4    understand what is in the written allocution, if each sentence

5    is read out loud and the Court asks him if he understands that

6    and agrees to that, and he is essentially adopting that

7    statement as his own.  Would that facilitate things?

8              THE COURT:  So we could -- let's see.  It's written

9    in Spanish, correct?

10             MR. OLIVA:  Yes, Your Honor.

11             THE COURT:  Okay.  So Mr. Oliva, why don't you read

12   --

13             MR. OLIVA:  He read it yesterday.  We went through

14   it.  He read it, you know, slowly.  When he reads, he reads

15   and he mouths, you know, and he read it again this morning.

16             THE COURT:  So he can just read it slowly and then

17   we'll just have the translation.

18             Just take your time.  That's all.

19             THE DEFENDANT:  The is the first time I have read

20   anything in public, so I apologize.

21             THE COURT:  You don't have to apologize.  I

22   understand.  Just take your time.

23             THE DEFENDANT:  Starting in or about 2007 and

24   continuing and to 2014, I was a manager in a criminal

25   enterprise that included more than five people.
```

1        During my participation with the organization, I was

2   the leader of a group that collected proceeds of drug

3   trafficking and provided security to Los Urabeños, who

4   transported thousands of kilograms of cocaine from Colombia to

5   Central America, knowing that those drugs would eventually be

6   imported illegally to the United States.

7        Specifically, on or about 2007, I along with others,

8   distributed approximately 2000 kilos of cocaine that were

9   transported by boat from Colombia to Guatemala, with a final

10  destination being the United States.

11       Around 2011, I was the manager of one of the zones

12  in Colombia that were under the control of the drug

13  trafficking organization.  I was responsible for providing

14  security for the transportation of the drugs through my zone

15  and to collect taxes for the drug traffickers or on behalf of

16  the drug traffickers regarding the drugs that were transported

17  through my zone in Colombia to Central America and South

18  America, with the final destination in the United States.

19       Around 2014, I along with others distributed at

20  least one thousand kilograms of cocaine that were transported

21  from Colombia to Central America, with a final destination in

22  the United States.

23       During the time that I belong to the organization, I

24  along with others used violence and threats of the use of

25  violence, including the assassination of drug trafficking

1    rivals.

2          During the time that I belong to the organization, I

3    obtained substantial income due to my participation in the

4    organization.

5          THE COURT:  Is the allocution satisfactory to the

6    government?

7          MS. HENRY:  Yes, Your Honor.

8          I would just offer one additional point regarding

9    venue.  The defendant referred to acts that occurred outside

10   the United States.

11         Due to the nature of these charges, the government's

12   basis for venue is the extraterritoriality statute of 21

13   United States Code, Section 959, and the defendant first

14   landed in the judicial district via John F. Kennedy

15   International Airport.

16         THE COURT:  I'm sorry.  I couldn't hear you.

17         MS. HENRY:  Excuse me.  The defendant first landed

18   in this district via John F. Kennedy International Airport.

19         MR. OLIVA:  And I concur with that as well.

20         THE COURT:  And this was during the time that he was

21   participating in the criminal enterprise?

22         MS. HENRY:  Meaning, Your Honor, that the acts

23   occurred during the time period that the defendant stated;

24   however, under that statute, venue attaches in the district

25   where the defendant first lands in the United States.

```
 1              THE COURT:  Understood.  Okay.
 2              And the defendant understands that he waives any
 3   issue as to venue, correct?
 4              MR. OLIVA:  Yes, Your Honor.
 5              THE COURT:  And with that, is the allocution
 6   satisfactory to the government?
 7              MS. HENRY:  Yes, Your Honor.
 8              THE COURT:  Based on the information given to me, I
 9   find that Mr. Martinez is acting voluntarily, that he
10   understands his rights and the consequences of his plea, and
11   that there is a factual basis for the plea, and I therefore
12   accept his plea of guilty to Count 1 of the superseding
13   indictment.
14              I've gone through some length already explaining the
15   sentencing procedures.  There will be a separate scheduling
16   order that will issue in connection with objections to the
17   Pre-sentence Report.
18              I do direct everybody's attention to my standard
19   requirements in criminal cases, but just to clarify, it is a
20   simultaneous schedule.  That means that both the government
21   and defense counsel's objections -- or if there are no
22   objections, that has to be in writing.  Everything has to be
23   in writing -- 14 days after disclosure.  Please make sure I
24   get a hard courtesy copy.
25              So just to be clear, if there are objections or
```

1    there are no objections, there should be a letter directed to

2    Probation indicating that.

3            If there are objections, the adversary must respond

4    in 14 days, again, in writing.  Please make sure I get a hard

5    courtesy copy.  I only need one copy.  That's fine.

6            If a reply is wished by the desired, by the

7    proponent of the objection, then again, that's 14 days after

8    the response.

9            In connection with sentencing memoranda, that has

10   changed from what I have in my standard requirements.  So just

11   to be clear the change is as follows:  I now require the

12   government to file first, and that would be 14 days prior to

13   sentencing.  You count backwards from the date of sentence.

14   Do not include the date of sentence.  That way, you land on

15   the date it's due.  And defense counsel's sentencing

16   memorandum is due seven days prior to sentence.  Again,

17   counting backwards the same way.

18           MS. HENRY:  Calendar days, Your Honor?

19           THE COURT:  Calendar days, yes.  So that's another

20   change.  I went federal rules on it, basically.  Okay?  So 14

21   days, and do away with counting up holidays and weekends and

22   all of that sort of thing.  So 14 days should take care of any

23   of that, by and large.

24           Trials happen.  Life happens.  If you can't comply

25   with that schedule, just let me know.  This is bound to be a

1   fairly complicated Pre-sentence Report.  There could be

2   complicated objections.

3          So I read absolutely everything that is submitted.

4   So just let us know if we have to adjust the schedule.  The

5   sooner we know, the better.  Okay?

6          If you have any questions about any of this, just

7   contact my deputy.  Okay?

8          MR. OLIVA:  Thank you, Your Honor.

9          THE COURT:  Anything else the parties would like to

10  address with the Court?

11         MS. HENRY:  No, Your Honor.

12         MR. OLIVA:  No, Your Honor.

13         THE COURT:  Okay.  Thank you, marshals.  Thank you

14  for your patience.  Please take charge.

15         Thank you, Mr. Michelena.

16         THE INTERPRETER:  You're welcome, Your Honor.

17         THE COURT:  Thank you, Mr. Martinez.

18         THE DEFENDANT:  Thank you, Your Honor.

19         (Sentencing concluded.)

20

21

22

23

24

25